IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

**DISABILITY RIGHTS MISSISSIPPI**                                                                  **PLAINTIFF**

**V.**                                                  **CAUSE NO.** 1:25-cv-45-GHD-RP

**LOUISVILLE MUNICIPAL SCHOOL DISTRICT**                        **DEFENDANT**

**COMPLAINT**
*For Declaratory and Injunctive Relief*

      Plaintiff, DISABILITY RIGHTS MISSISSIPPI ("DRMS"), seeks to discharge its investigative duties at Nanih Waiya Attendance Center, a school located within the LOUISVILLE MUNICIPAL SCHOOL DISTRICT, located in Louisville, Mississippi. Defendants and their legal counsel have refused to permit access and provide requested records, thereby impeding DRMS from exercising its federally mandated duty to protect and advocate for individuals with mental illness in Mississippi. DRMS asks this Court to preliminarily and permanently enjoin the Defendant from violating federal law. In support of the same, DRMS provides as follows:

**I.     INTRODUCTION**

1. This action seeks to enjoin the Defendants from continuing to violate federal and state laws that enables DRMS with investigatory authority for the purpose of fulfilling its mandate as the protection and advocacy agency for people with disabilities in Mississippi.

2. Due to Defendant's continuing violation of federal and state law, DRMS seeks declaratory, preliminary, and permanent injunctive relief to enjoin Defendant from denying access to certain records to assess the reported abuse and neglect of student J.E.

3. DRMS files this suit and seeks relief as described after making efforts to resolve this matter with Defendants and their legal counsel. DRMS also seeks costs and any other available relief.

4. Each paragraph of this Complaint incorporates all other without specific restatement.

## II. JURISDICTION AND VENUE

5. Jurisdiction is vested in this Court as this case raises a question of general federal law, 28 U.S.C. §1331, and under this Court's supplemental jurisdiction as to Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

6. Plaintiff's cause of action arises under the Protection and Advocacy for Individuals with Mental Illness Act of 1986 ("PAIMI Act"), 42 U.S.C. §10801 *et seq.*; the Developmental Disabilities Assistance and Bill of Rights Act of 2000 ("PADD Act"), 42 U.S.C. §15041 *et seq.*; the Protection and Advocacy for Individual Rights Act ("PAIR Act"), 29 U.S.C. §794(e). Costs may be awarded pursuant to Fed. R. Civ. P. 54.

7. Venue is proper in this Court under 28 U.S.C. §1391(b). Defendants' main offices of operations are located in this district.

## III. PARTIES

8. Plaintiff, DISABILITY RIGHTS OF MISSISSIPPI, is a non-profit corporation duly incorporated in the state of Mississippi. DRMS is designated by the Governor of the State of Mississippi as the protection and advocacy system for people with disabilities in Mississippi. DRMS files this complaint in its own name to redress injuries to itself in fulfilling its mandate to protect and advocate for the rights of people with disabilities.

9. DRMS is located at 5 Old River Place, Suite 101, Jackson, Mississippi 39202.

10. Congress established the protection and advocacy ("P&A") system in 1975 to protect and advocate for the rights of persons with developmental disabilities, and reauthorized the system in the Developmental Disabilities Assistance and Bill of Rights Act of 2000 (the "PADD Act"). 42 U.S.C. § 15041 *et seq.* Congress provided P&A systems with the authority to investigate incidents of abuse and neglect against individuals with developmental disabilities

and pursue legal, administrative, and other remedies on their behalf. 42 U.S.C. § 15043(a). Congress thereafter expanded the scope of the P&A system to provide protection and advocacy services to all persons with disabilities. The Protection and Advocacy for Individuals with Mental Illness Act of 1986 (the "PAIMI Act") provides for the protection of rights of individuals with mental illness, 42 U.S.C. § 10801 *et seq.*; and the Protection and Advocacy of Individual Rights Program (the "PAIR Act") was created to protect the rights of all other individuals with disabilities who are not covered under the PADD and PAIMI Acts. 29 U.S.C. § 794e *et seq.*

11. Pursuant to these laws, DRMS has a federal mandate to protect and advocate for the rights of persons with disabilities in Mississippi, including those that are under the care of the Defendant. Among other activities, DRMS travels across the state of Mississippi, regulating monitoring facilities and investigating allegations of abuse and neglect.

12. Defendant, LOUISVILLE MUNICIPAL SCHOOL DISTRICT, is an entity located in Louisville, Mississippi. The Defendant may be served with process via the Superintendent, Dr. David Luke, at 891 South Columbus Avenue, Louisville, Mississippi.

13. Individuals with mental illness, developmental disabilities, and/or other physical or mental impairments that substantially limit one or more major life activities of such individuals go to school in the LOUISVILLE MUNICIPAL SCHOOL DISTRICT.

14. Individuals with disabilities who go to school in the LOUISVILLE MUNICIPAL SCHOOL DISTRICT receive care, services, and support by the school district.

15. Each school within the LOUISVILLE MUNICIPAL SCHOOL DISTRICT is a facility as defined in 42 U.S.C. §10802(3) and 42 C.F.R. §51.2.

16. Each school within the LOUISVILLE MUNICIPAL SCHOOL DISTRICT is also a location, as provided in 42 U.S.C. §15043(a)(2)(H), and a service provider, as provided in 42 C.F.R. §

1326.27(c), because services, supports, and other assistance are provided there to individuals with disabilities.

17. This includes NANIH WAIYA ATTENDANCE CENTER, located at 4880 Highway 397, Louisville, Mississippi.

## IV.   OVERVIEW OF P&A ACCESS AUTHORITY

18. The Protection and Advocacy (P&A) system was established through a series of federal acts to protect the rights of individuals with disabilities across different settings and needs. Each act addresses specific populations and types of disabilities, but together they create a cohesive framework that enables P&A agencies to support and protect a wide range of individuals with disabilities.

19. Protection and Advocacy for Individuals with Mental Illness Act ("PAIMI") provides P&As with the authority to investigate reports of abuse, neglect, and rights violations of individuals with mental health conditions, ensuring they receive appropriate care and protections. This authority is granted under the PAIMI Act, 42 U.S.C. §§ 10801–10827.

20. Protection and Advocacy for Developmental Disabilities ("PADD") authorizes P&As to protect the rights of individuals with developmental disabilities, such as intellectual disabilities, autism, and cerebral palsy. PADD mandates advocacy for their access to essential services, education, and inclusion in the community. This mandate is found in the Developmental Disabilities Assistance and Bill of Rights Act, 42 U.S.C. §§ 15001–15115.

21. Protection and Advocacy of Individual Rights ("PAIR") extends P&A services to individuals with disabilities who do not qualify under PAIMI or PADD, covering individuals with physical disabilities, sensory impairments, or chronic illnesses. It authorizes P&As to advocate for accessibility and anti-discrimination protections under laws like the Americans with

Disabilities Act (ADA) and the Rehabilitation Act. PAIR is authorized under the Rehabilitation Act, 29 U.S.C. § 794e.

22. The P&A has authority through other specialized programs which address unique needs, such as assisting individuals with traumatic brain injuries (PATBI) or ensuring voting access for individuals with disabilities (PAVA). PATBI is authorized by the Traumatic Brain Injury Act, 42 U.S.C. § 300d-53, and PAVA under the Help America Vote Act, 42 U.S.C. § 15461.

23. Together, these acts enable P&As to serve individuals with a broad spectrum of disabilities across various aspects of life, including education, healthcare, accessibility, and rights protection.

24. This integrated system empowers P&As with the necessary authority and resources to comprehensively monitor, investigate, and advocate for individuals with disabilities, ensuring their health, safety, and civil rights are upheld in all settings.

### V. RELEVANT FACTS

25. On December 19, 2024, DRMS received a complaint from J.E.'s guardian alleging physical abuse of J.E. by officials at the Nanih Waiya Attendance Center. The allegation included photographs and statements in support of this allegation.



26. Furthermore, additional allegations surfaced regarding improper neglect for failing to provide a safe environment during restraint and seclusion of J.E. and improper neglect for failing to carry out J.E.'s Individualized Education Program ("IEP") plan.

27. On January 7, 2025, the first initiation of investigation letter was mailed and emailed to senior

staff at Nanih Waiya Attendance Center and Louisville Municipal School District. This letter established probable cause, initiated the investigation, and formally requested six types of records in light of the allegations of abuse and neglect. The requested records included a personnel file, internal investigation documents, incident reports, video surveillance, and interviews of staff related to the incident, as well as policies and procedures for Nanih Waiya Attendance Center. This letter is attached as **Exhibit A**.

28. On January 23, 2025, DRMS left a message with Naniah Waiya Attendance Center Officials. Subsequently, the Louisville Municipal School District's Attorney, Kashonda Day, called DRMS' investigator, Elise Rueff. During the phone call, Attorney Day acknowledged that she was familiar with our federal mandate to investigate allegations of abuse and neglect. Even so, Attorney Day requested negotiations to narrow the scope of DRMS' investigation and suggested that it may be easier to deny DRMS access to the records and argue an access suit in federal court than for Louisville Municipal School District to hand over the requested records. DRMS' investigator responded by noting DRMS' mandate to investigate allegations of abuse and neglect fully and requested Attorney Day contact a DRMS attorney.

29. After the January 23, 2025, telephone call with Attorney Day, DRMS sent a second investigation initiation letter and request for records via certified mail. This letter is attached as **Exhibit B**. This second letter was emailed and mailed to Nanih Waiya Attendance Center staff, School District Officials, and Attorney Day.

30. DRMS documented multiple unsuccessful attempts to communicate with Nanih Waiya Attendance Center or Attorney Day regarding the investigation. Then, on February 3, 2025, DRMS attorney Keren Welch received a call from Attorney Day. Attorney Day stated that the Louisville Municipal School District was only willing to provide one of the six records DRMS requested pertaining to the investigation: a copy of the Louisville Municipal School

District's own internal investigation. Attorney Day again expressed the hope that DRMS could narrow the scope of its investigation, and only review the selected record the Louisville Municipal School District wished to provide. Attorney Day acknowledged in the call that she understood and was familiar with our federal authority, which expressly grants access to the records that DRMS requested. Further, she agreed that she understood our mandate to fully investigate allegations of abuse or neglect. Attorney Day verbally confirmed that the District was denying access to all but one of the six requested records.

31. In the telephone call, Attorney Day stated that she would send correspondence summing up the telephone call, which would formally deny, in writing, DRMS' access to these records. No such correspondence has been received. Correspondence from DRMS to Attorney Day summing up the contents of the February 3, 2025, telephone call is attached as **Exhibit C**.

32. On February 18, 2025, DRMS received the certified letter mailed to Nanih Waiya Attendance Center, unopened and marked "return to sender." See **Exhibit D**.

33. To date, the Louisville Municipal School District has neither provided DRMS with any records nor responded to any of our attempts to investigate the alleged abuse of J.E. This, in combination with Attorney Day's verbal denial of five of the six records requested by DRMS, is a clear denial of access necessary for DRMS to fulfill its investigative mandate.

## VI. CLAIMS FOR RELIEF

### CLAIM I: VIOLATIONS OF THE PADD ACT & IMPLEMENTING REGULATIONS

34. DRMS is authorized to have access at reasonable times to any individual with a developmental disability in a location in which services, supports, and other assistance are provided to such an individual. 42 U.S.C. § 15043(a)(2)(H).

35. DRMS is authorized to have unaccompanied access to individuals with developmental disabilities at all times necessary to conduct a full investigation of an incident of abuse and neglect. 45 C.F.R. § 1326.27(b).

36. Access to individuals with developmental disabilities includes the opportunity to meet and communicate privately with individuals regularly, both formally and informally, by telephone, mail, and in person. 45 C.F.R. § 1326.27(d).

37. A P&A system shall have reasonable unaccompanied access to public and private service providers, programs in the State, and to all areas of the service provider's premises that are used by individuals with developmental disabilities or are accessible to them. Such access shall be provided without advance notice and made available immediately upon request. This authority shall include the opportunity to interview any individual with developmental disability, employee, or other persons, including the person thought to be the victim of such abuse, who might be reasonably believed by the system to have knowledge of the incident under investigation. . 45 C.F.R. § 1326.27(b).

38. The P&A system has access to the records of individuals with developmental disabilities under the following circumstances:

    a. If authorized by an individual who is a client of the system, or who has requested assistance from the system, or by such individual's legal guardian, conservator or other legal representative.
    b. In the case of an individual to whom all of the following conditions apply:
        i. The individual, due to his or her mental or physical condition, is unable to authorize the system to have access;
        ii. The individual does not have a legal guardian, conservator or other legal representative, or the individual's guardian is the State (or one of its political subdivisions); and
        iii. The individual has been the subject of a complaint to the P&A system, or the P&A system has probable cause (which can be the result of monitoring or other activities including media reports and newspaper articles) to believe that such individual has been subject to abuse and neglect.

    c. In the case of an individual, who has a legal guardian, conservator, or other legal representative, about whom a complaint has been received by the system or, as a result of monitoring or other activities, the system has determined that there is probable cause to believe that the individual with developmental disability has been subject to abuse or neglect, whenever the following conditions exist:
        i. The P&A system has made a good faith effort to contact the legal guardian, conservator, or other legal representative upon prompt receipt (within the timelines set forth in paragraph (c) of this section) of the contact information (which is required to include but not limited to name, address, telephone numbers, and email address) of the legal guardian, conservator, or other legal representative;
        ii. The system has offered assistance to the legal guardian, conservator, or other legal representative to resolve the situation; and
        iii. The legal guardian, conservator, or other legal representative has failed or refused to provide consent on behalf of the individual.
    d. If the P&A determines there is probable cause to believe that the health or safety of an individual is in serious and immediate jeopardy, no consent from another party is needed. 45 C.F.R. §1326.25.

39. Defendants' refusal to allow DRMS reasonable access to the facilities and records violates the PADD Act and its implementing regulations.

40. P&A agencies like DRMS interpret "abuse" and "neglect" broadly to protect individuals with disabilities from a wide range of harms, including physical, mental, and emotional mistreatment, as well as failures in providing necessary care, supervision, or resources.

41. This interpretation empowers DRMS to investigate any credible concerns regarding the treatment and welfare of individuals with disabilities, particularly in institutional settings, to ensure their safety and uphold their rights.

42. Defendant's violation of the PADD Act and its implementing regulations frustrates and interferes with DRMS' federal mandate to protect people with disabilities in Mississippi; provide legal advocacy for people with disabilities; conduct a reasonable and effective investigation if determined to be necessary; and determine whether corrective action should be taken.

43. Defendant's violation of the PADD Act and its implementing regulations frustrates the rights of people with disabilities to have access to a meaningful and effective protection and advocacy system.

44. Pursuant to 42 U.S.C. §15043(a)(2)(A)(i), DRMS is authorized to pursue legal, administrative, and other appropriate remedies or approaches to ensure the protection of, and advocacy for, the rights of such individuals within Mississippi who are or who may be eligible for treatment, services, or habilitation.

45. DRMS is entitled to relief under 42 U.S.C. §15043(a)(2)(H), and 45 C.F.R. §1326.27(d).

## VII. NECESSITY FOR INJUNCTIVE RELIEF

46. The Defendant has acted and continues to act in violation of the law as explained above.

47. DRMS and the individuals it is mandated to serve do not have an adequate remedy at law and will be irreparably harmed if Defendants are permitted to continue blocking DRMS' access to investigate incidents of abuse and neglect at their unlicensed personal care home.

## VIII. REQUESTED RELIEF

WHEREFORE, DRMS respectfully requests the following relief:

A. a declaratory judgment that Defendant has violated DRMS' rights under the PADD Act;

B. a preliminary and thereafter permanent injunction ordering Defendant to provide reasonable and unaccompanied access to their facility pursuant to its federally mandated P&A authority;

C. a preliminary and thereafter permanent injunction requiring the Defendant to promptly provide DRMS with access to the requested records pursuant to its federally mandated P&A authority;

D. retention of jurisdiction over this action to ensure Defendants' compliance with the mandates of the PADD Act;

E. an award of costs pursuant to Fed. R. Civ. Proc. 54 and attorney's fees; and

    F.  any such other relief as the Court deems just, equitable and appropriate.

**RESPECTFULLY SUBMITTED**, this the 28th day of March, 2025.

                                          **DISABILITY RIGHTS MISSISSIPPI**

                                          */s/ Greta K. Martin*
                                          GRETA KEMP MARTIN, MSB #103672

**Attorneys for Plaintiff:**
GRETA K. MARTIN, MSB #103672
DISABILITY RIGHTS MISSISSIPPI
5 OLD RIVER PLACE, SUITE 101
JACKSON, MISSISSIPPI 39202
Office: (601)968-0600
Facsimile: (601)968-0665