

January 7, 2025

*Via Electronic Mail and U.S. Mail*

1:25-cv-45-GHD-RP

David Luke
Superintendent

Rosemary Lampley
Special Education Director

Joseph Vowell
Nanih Waiya Assistant Principal

Suzanne Cain
Nanih Waiya Principal

RE: **PROBABLE CAUSE NOTICE & INITIATION OF INVESTIGATION - PURSUANT TO PROTECTION AND ADVOCACY FOR PERSONS WITH DEVELOPMENTAL DISABILITIES[1] ("PADD")**

To Whom It May Concern:

Disability Rights Mississippi ("DRMS"), by and through this correspondence, is notifying you that our agency is initiating an investigation concerning potential abuse and neglect at Nanih Waiya Attendance Center.

DRMS has received a complaint regarding a specific incident of alleged abuse and neglect that occurred on or around the 2024-25 academic school year and involved the following student: Jordan Edmonson.

### FINDINGS

DRMS has received multiple complaints concerning Jordan Edmonson, including allegations of physical abuse, excessive classroom removal and seclusion, and non-compliance with IEP. Specifically, an allegation with supporting documents and photographs was provided regarding an excessive force incident that led to bruising and abrasions on said child. Additional complaints include incidents of being locked in a seclusion room and failure to follow all required steps on Jordan's IEP plan.

---

[1] 42 U.S.C. § 15043(a)(2)(B)

Exhibit A

## AUTHORITY

Pursuant to 42 U.S.C. § 15043, DRMS has the authority to investigate abuse and neglect in any setting where a person with intellectual or developmental disabilities receives services. With this authority, we may access and monitor both facilities and records to ensure that people's rights are protected. DRMS may investigate an allegation of abuse or neglect if a report is made or "if there is probable cause to believe that abuse or neglect has occurred."[2]

DRMS must have reasonable unaccompanied access to residents at all times in order to investigate allegations of abuse and neglect.[3] A determination of probable cause can come from routine monitoring, external reports, direct complaints from clients and/or their families, and/or other available sources.[4] DRMS' access to public and private service providers, programs in the state, and to all areas of the service provider's premises that are used by individuals with disabilities or are accessible to them will be provided without advance notice and made available immediately upon request.[5] This authority includes the ability to interview any individual with a disability, all employees, or other persons who DRMS might reasonably believe to have knowledge of the incident under investigation.[6] DRMS is not required to provide the name or other identifying information regarding the people with whom it plans to meet or justify or explain its interactions with such persons.[7]

Further, DRMS has access to a wide range of records as part of its investigatory authority.[8] This includes records made or received by facility staff (i.e., intake, assessment, evaluation,

---

[2] 42 U.S.C. § 15043(a)(2)(B)

[3] 45 C.F.R. § 1326.27(b)

[4] 45 C.F.R. § 1326.25(a)(2)(iii)

[5] 45 C.F.R. § 1326.27(b)(2)

[6] 45 C.F.R. § 1326.27(b)(1)

[7] 45 C.F.R. § 1326.27(b)(2)

[8] Records may be "written or in another medium, draft or final, [and] includ[e] handwritten notes, electronic files, photographs or video or audio tape records."[ 45 C.F.R. § 1326.25(b)]

education, training, and other services),[9] medical records,[10] financial records,[11] investigation records from other governmental or regulatory agencies,[12] discharge planning records,[13] and professional, performance, building, or other safety standards including demographic and statistical information.[14]

## INVESTIGATION

As part of its investigation, DRMS requests the following to be made available to the agency:

(1) Personnel files for the following staff: Joseph Vowell;
(2) Any internal investigation documents related to the above-described incident(s);
(3) Any incident reports related to the above-described incident(s) or pertaining to Jordan Edmonson;
(4) Video Surveillance of any interactions between Jordan Edmonson and staff for the week of October 20-26, 2024;
(5) Interviews of the employees and/or staff that are identified throughout the course of this investigation, specifically those employees/staff that have provided care to students at Nanih Waiya Attendance Center for the past sixty (60) days;
(6) The entirety of the policy and procedure manual for Nanih Waiya Attendance Center.

Please provide DRMS with copies of the requested documentation within three (3) business days upon receipt of this written notice. **If the charge to produce such documentation exceeds an amount totaling $100, please notify DRMS, and we will come on-site to inspect the documents prior to reproduction.** If the video/audio footage cannot be reproduced, please notify DRMS, and we will come on-site to view said footage. If DRMS has requested video surveillance footage and/or any other documentation, please take notice that Nanih Waiya Attendance Center should take all necessary steps to preserve the same. Any attempt to alter, erase, and/or change these records and/or footage is a violation of state and federal law.

---

[9] 45 C.F.R. §1326.25(b)(1) ["This includes records stored or maintained at sites other than that of the service provider, as well as records that were not prepared by the service provider, but received by the service provider from other service providers."]

[10] 45 C.F.R. § 1326.25 (b)(1)

[11] Id.

[12] 42 U.S.C. § 10543(b)(2)

[13] 42 U.S.C. § 10543(c)(3); 45 C.F.R. § 1326.25 (b)(2)(iii)

[14] 45 C.F.R. § 1326.25 (b)(4)

DRMS will conduct further monitoring visits until this investigation has been concluded. These visits will occur unannounced and during different shifts at Nanih Waiya Attendance Center. As this investigation progresses, the DRMS Investigation Team may request other documents pursuant to the access authority referenced herein. DRMS requests that any further documentation that is required be provided to DRMS within five (5) business days of such request. If DRMS requires any video surveillance not noted in this correspondence, we will notify this facility immediately, and we request that any footage that has been flagged by DRMS be preserved until such time as a DRMS advocate can schedule an on-site visit to view such footage.

This investigation will continue and remain open until DRMS has provided a report of its findings to both Nanih Waiya Attendance Center and other appropriate parties or until DRMS believes this matter has been resolved/concluded and has provided Nanih Waiya Attendance Center notification of the same. Any decision or further action that DRMS determines is necessary for it to take as the P&A for the state of Mississippi following the conclusion of its investigation is solely up to the discretion of DRMS and does not have to be divulged to Nanih Waiya Attendance Center or any other parties.

If DRMS's access to facilities, programs, residents, or records is delayed or denied, Nanih Waiya Attendance Center must promptly provide a written statement outlining the reasons for such denial or delay immediately. Please do not hesitate to contact me if you have any questions regarding this notice. I can be reached at (601) 968-0600 (ext. 254) or via email at erueff@drms.ms.

Sincerely,

Elise Rueff
Lead Investigator

Keren Welch
Monitoring and Investigations Attorney