IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

**DISABILITY RIGHTS MISSISSIPPI**                                                  **PLAINTIFF**

**v.**                                        **CIVIL ACTION NO.: 1:25-CV-45-GHD-RP**

**LOUISVILLE MUNICIPAL SCHOOL DISTRICT**                            **DEFENDANT**

<u>**MEMORANDUM OF AUTHORITIES SUPPORTING JUDGMENT ON THE PLEADINGS**</u>

**NOW COMES DEFENDANT,** Louisville Municipal School District, by counsel, having moved pursuant to Fed. R. Civ. Proc. 12(c) for Judgment on the Pleadings, files this its Memorandum of Authorities in Support of Motion and now shows unto the Court as follows.

    **I.**     **PREMISE**

Disability Rights of Mississippi ("DRMS") files the instant Complaint requesting that Louisville Municipal School District ("LMSD") give them unfettered access to records, documents, surveillance footage, and the facilities at Nanih Waiya Attendance Center. According to DRMS, it is authorized to have this access by federal statutes and the Code of Federal Regulations. Not so.

Instead, in the PADD Act, Congress unambiguously gives DRMS statutory authority to request very limited records and have limited access to students with developmental disabilities. Because DRMS's statutory authority under the PADD Act is clear and unambiguous, judicial deference the agency written regulations is unnecessary. The vast majority of requests made by DRMS is outside of their statutory authority and LMSD is not required to provide DRMS access.

With that context in mind, DRMS cannot meet their burden in showing that a preliminary injunction is necessary in this case. First, DRMS cannot show a substantial likelihood of success

on the merits of the case. Second, DRMS has failed to plausibly plead any imminent and irreparable injury. And lastly, the nonexistent threat to DRMS does not outweigh LMSD's harm in granting the injunction, as DRMS's requests disserve the public interest in LMSD providing quality education to the children of Mississippi.

For all these reasons, LMSD's Motion for Judgment on the Pleadings should be granted.

## II. FACTS

Pursuant to the Complaint, on December 19, 2024, DRMS received a complaint from J.E.'s guarding alleging abuse by an official at Nanih Waiya Attendance Center.[1] The complaint included photographs of the alleged abuse and "statements" in support of the allegation.[2] DRMS also alleges that "additional allegations surfaced regarding improper neglect for failing to provide a safe environment during restraint and seclusion of J.E. and improper neglect for failing to carry out J.E.'s Individualized Education Program ("IEP") plan.[3]

Approximately three (3) weeks after receiving the complaint, DRMS sent a letter and email to "senior staff" at Nanih Waiya Attendance Center and LMSD.[4] Therein, DRMS "formally requested" six types of information including "a personnel file, internal investigation documents, incident reports, video surveillance, and interview of staff related to the incident, as well as policies and procedures for Nanih Waiya Attendance Center.[5] Additionally, the letter stated that "DRMS will

---

[1] **[Doc. 1]** at ¶ 25.

[2] **[Doc. 1]** at ¶ 25.

[3] **[Doc. 1]** at ¶ 26.

[4] **[Doc. 1]** at ¶ 27.

[5] **[Doc. 1]** at ¶ 27; *see also* **[Doc. 1-1]**.

conduct further monitoring visits" that would "occur unannounced and during different shifts at the Nanih Waiya Attendance Center."[6] The letter goes on to state that additional documents may be requested "[a]s the investigation progresses[.]"[7]

On January 23, 2025, DRMS investigator Elise Rueff spoke with Ms. Kashonda Day, an attorney for LMSD.[8] During the conversation, Ms. Day acknowledged the "federal mandate to investigate allegations of abuse and neglect[,]" but requested that DRMS narrow the scope of their requests.[9] On the same day, DRMS sent a second letter the LMSD and Ms. Day.[10] On February 3, 2025, Ms. Day spoke with DRMS attorney Keren Welch.[11] Ms. Day, again, requested that DRMS narrow the scope of the records requested, and confirmed that LMSD was denying access to the majority of the records requested.[12] DRMS alleges that to date, no records have been provided by LMSD and there has been no response to any attempts to investigate the alleged abuse of J.E.[13]

DRMS alleges that they are entitled to injunctive relief because LMSD violated the PADD Act and implementing regulations.[14] Specifically, DRMS alleges that it has the statutory authority

---

[6] **[Doc. 1-1]**.

[7] **[Doc. 1-1]**.

[8] **[Doc. 1]** at ¶ 28.

[9] **[Doc. 1]** at ¶ 28.

[10] **[Doc. 1]** at ¶ 29.

[11] **[Doc. 1]** at ¶ 30.

[12] **[Doc. 1]** at ¶ 30.

[13] **[Doc. 1]** at ¶ 33.

[14] **[Doc. 1]** at Section IV.

under 42 U.S.C. § 15043(a)(2)(H) to have "access at reasonable times to any individual with a developmental disability in a location which services, supports, and other assistance are provided to such an individual."[15] Next, DRMS alleges that it has authority under the Code of Federal Regulations to "have unaccompanied access to individuals with developmental disabilities at all times necessary to conduct a full investigation of an incident of abuse and neglect" and "the opportunity to meet and communicate privately with individuals regularly, both formally and informally, by telephone, mail, and in person."[16] Additionally, DRMS alleges authority under the Code of Federal Regulations to have "reasonable unaccompanied access to public and private service providers . . . and to all areas of the service provider's premises that are used by individuals with developmental disabilities or are accessible to them" and that such "access shall be provided without advanced notice and made available immediately upon request", and the authority to "interview any individual with developmental disability, employee, or other persons, including the person thought to be the victim of such abuse, who might be reasonably believed by the system to have knowledge of the incident under investigation."[17] Lastly, DRMS alleges it has access to the records of individuals with developmental disabilities.[18]

DRMS alleges that it is entitled to a preliminary injunction because LMSD "has acted and continued to act in violation of the law" and that DRMS and the individuals it is mandated to serve

---

[15] **[Doc. 1]** at ¶ 34.

[16] **[Doc. 1]** at ¶¶ 35-36 (citing the Code of Federal Regulations).

[17] **[Doc. 1]** at ¶ 37.

[18] **[Doc. 1]** at ¶ 38.

4

will be irreparably harmed.[19]

### III. STANDARD

A. Rule 12(c)

This Court should dismiss this case under FRCP 12(c). "A Rule 12(c) motion is subject to the same standard as a motion to dismiss under FRCP 12(b)(6)."[20] "The court may also consider documents attached to a motion to dismiss if they are referred to in the complaint and are central to the plaintiff's claim."[21] "To withstand a motion to dismiss, a complaint must allege more than labels and conclusions, as a formulaic recitation of the elements of a cause of action will not do. It must state a plausible claim for relief, rather than facts merely consistent with liability."[22] The Court must set aside "any unsupported legal conclusions," the truth of which the Court cannot assume.[23] The Court must also ask "whether the remaining allegations are sufficient to nudge the plaintiff's claim across the plausibility threshold."[24]

B. Preliminary Injunction

"A preliminary injunction is 'an extraordinary remedy which should not be granted unless the party seeking it has clearly carried its burden of persuasion . . . .'"[25] In order to carry such burden, DRMS must show:

---

[19] **[Doc. 1]** at ¶¶ 46-47.
[20] *Walker v. Beaumont Indep. Sch. Dist.,* 938 F.3d 724, 734 (5th Cir. 2019).
[21] *Griffin v. HSBC Mortg. Servs.,* 2016 U.S. Dist. LEXIS 35255, at *27 (N.D. Miss. Mar. 18, 2016) (quoting *Gallentine v. Hous. Auth. of City of Port Arthur, Tex.,* 919 F. Supp. 2d 787, 794 (E.D. Tex. 2013)(collecting cases)).
[22] *Heinze v. Tesco Corp.,* 971 F.3d 475, 479 (5th Cir. 2020) (cleaned up).
[23] *Id.*
[24] *Id.* (quoting *Robertson*, 751 F.3d at 390).
[25] *Future Proof Brands. L.L.C. v. Molson Coors Bev. Co.*, 982 F.3d 280, 288 (5th Cir. 2020) (quoting *PCI Transp., Inc. v. Fort Worth & W. R.R. Co.*, 418 F.3d 535, 545 (5th Cir. 2005) (cleaned up)).

> (1) a substantial likelihood that plaintiff will prevail on the merits, (2) a substantial threat that plaintiff will suffer irreparable injury if the injunction is not granted, (3) that the threatened injury to plaintiff outweighs the threatened harm the injunction may do to defendant, and (4) that granting the preliminary injunction will not disserve the public interest.[26]

The Fifth Circuit has noted that the granting of preliminary injunction is a "drastic" and "extraordinary" remedy.[27] "Failure to establish any one of the four factors defeats the right to injunction."[28]

### IV. LAW AND DISCUSSION

PADD is clear and unambiguous relating to P&As authority to individual records and access to individuals with developmental disabilities. DRMS's reliance on several federal regulations to support their overreaching of authority is misplaced post-*Loper Bright Enterprises v. Raimondo*. The clear and unambiguous text of Section 15043 gives P&As such as DRMS limited authority to records and access under the PADD Act. As such, DRMS does not have the unfettered authority as requested by them to irrelevant access to records and access to Nanih-Waiya Attendance Center, and judicial deference to the Code of Federal Regulations is unnecessary.

Further, DRMS's request for injunctive relief fails, as DRMS cannot meet its burden on one of the four elements necessary to establish relief for a preliminary injunction. First, DRMS cannot prove a substantial likelihood of success on the merits of this case, as their requests for records and access is outside of their statutory authority. Second, DRMS has wholly failed to plausibly plead any imminent and substantial threat of irreparable injury if the injunction is not granted. Lastly, the harm to LMSD outweighs any speculative injury to DRMS because DRMS's overreaching requests

---

[26] *N. Miss. Med. Ctr., Inc. V. Quartiz Techs.*, 2025 U.S. App. LEXIS 1908, at *5 (5th Cir. Jan 28, 2025) (quoting *In re Coastal Plains, Inc.*, 179 F.3d 197, 205 (5th Cir. 1999)).
[27] *Id.* (quoting *Anibowei v. Morgan*, 70 F.4th 898, 902 (5th Cir. 2023)).
[28] *Id.* (citing *Roho, Inc. v. Marquis*, 902 F.2d 356, 361 (5th Cir. 1990)).

and misstated authority for carte blanche access to records and facilities does not serve the public interest in providing quality education for the children of Mississippi. For these reasons, DRMS's Complaint for Declaratory and Injunctive Relief should be dismissed.

### A. The Protection and Advocacy Statutes

Congress enacted three federal statutes to protect individuals with mental and developmental disabilities.[29] These statutes are the (1) Protection and Advocacy for Individuals with Mental Illness Act ("PAIMI")[30], (2) Developmental Disabilities Assistance Bill of Rights Act of 2000 ("DD Act" or "PADD")[31], and (3) Protection and Advocacy of Individual Rights Act ("PAIR").[32] "The P&A statutes provide funding for the state the establish independent organizations . . . that monitor and protect the rights of the mentally ill [and those with developmental disabilities]."[33] "DRMS is a non-profit corporation designated by the Governor as the protection and advocacy system for Mississippi citizens with disabilities. DRMS is federally mandated and authorized pursuant to [the P&A statutes] to monitor facilities housing disabled persons."[34]

Although similar, each P&A statute applies to a different category of disabled persons. PAIMI provides protections to individuals with mental illness.[35] The PADD Act "established the Protection and Advocacy System to provide protections for persons with developmental

---

[29] *J.H. v. Hinds Cnty.*, 2011 U.S. Dist. LEXIS 81659, at *2 (S.D. Miss. July 15, 2011).
[30] *See* 42 U.S.C. § 1801 *et seq*.
[31] *See* 42 U.S.C. § 15041 *et seq*.
[32] *See* 29 U.S.C. § 794e.
[33] *J.H.*, 2011 U.S. Dist. LEXIS 81659, at *2 (quoting *Advocacy Ctr. v. Stalder*, 128 F. Supp. 2d 358, 360 (M.D. La. 1991)). *See also* 42 U.S.C. § 15043(a).
[34] *Disability Rights Miss. v. Palmer Home for Child.*, 2024 U.S. Dist. LEXIS 227805, at *1-*2 (N.D. Miss. Dec. 17, 2024).
[35] *See Advocacy, Inc. v. Horn*, 2009 U.S. Dist. LEXIS 141988, at *4 (W.D. Tex. March 26, 2009) (citing 42 U.S.C. § 10803).

disabilities."[36] "The PAIR Act further extended the protection and advocacy mandate to protect the rights of individuals with disabilities who are ineligible for services under the PADD and PAIMI Acts."[37]

Here, DRMS specifically seeks relief under only the PADD Act.[38] Defendant agrees that this is the only avenue potentially providing DRMS with any relief, as PAIMI and PAIR do not apply to this situation.[39]

According to the PADD Act, DRMS has the "authority to investigate incidents of abuse and neglect of individuals with developmental disabilities if the incidents are reported to the system or if there is probable cause to believe that the incidents occurred[.]"[40] Additionally, DRMS has authority to "have access at reasonable times to any individual with a developmental disability in a location in which services, supports, or other assistance are provided to such an individual, in order to carry out the purpose of this subtitle."[41] Further, PADD gives DRMS the authority to access "all records of–any individual with a developmental disability who is a client of the system if such individual, or the legal guardian, conservator, or other legal representation of such individual, has authorized the system to have such access[.]"[42] The PADD Act additionally states that the term "record" as includes: "(1) a report prepared or received by any staff at any location which services, supports, or other assistance is provided to individuals with developmental disabilities; (2) a report prepared by an agency or staff person charged with investigating reports of incidents of abuse or

---

[36] *Id.* (citing 42 U.S.C. § 15041).
[37] *Id.* (citing 29 U.S.C. § 794e(f)).
[38] *See* **[Doc. 1]** at Section VI.
[39] J.E. has been diagnosed with autism, which specifically falls under the definition of a "developmental disability" in the PADD Act. *See*
[40] 42 U.S.C. § 15043(a)(2)(B).
[41] 42 U.S.C. § 15043(a)(2)(H).
[42] 42 U.S.C. § 15043(a)(2)(I).

neglect, injury, or death occurring at such location, that describes such incidents and the steps taken to investigate such incidents; and (3) a discharge planning record."[43]

B.     Effects of *Loper Bright Enterprises v. Raimondo*

In 2024, the Supreme Court "overruled *Chevron*, which required courts to defer to 'permissible' agency interpretations of a statute even if the court 'would have reached' a different view 'if the question initially had arisen in a judicial proceeding.'"[44] In other words, *Loper Bright* "eliminated the 'judicial invention' of deference to administrative action and rulemaking."[45]

As such, "*Loper Bright* simply instructs courts to follow 'the APA's basic textual command.'"[46] That command is "'independently interpreting the statute and effectuating the will of Congress.'"[47] In other words, *Loper Bright* "affirmed 'the unremarkable, yet elemental proposition reflected by judicial practice dating back to *Marbury*: that courts decide legal questions by applying their own judgment.'"[48] "Now, courts employ 'no deferential standard' when 'answering those legal questions.'"[49] "Instead, courts may use 'all relevant interpretive tools' to find the 'best' reading of a statute."[50] "If Congress does not define its terms, '[the Courts] accord those terms their ordinary, contemporary, common meaning.'"[51] In sum, the Courts "must 'determine the best reading of a

---

[43] 42 U.S.C. § 15043(c).

[44] *Utah v. Mincone*, 2025 U.S. Dist. LEXIS 26971, at *16 (N.D. Tex. Feb. 14, 2025) (quoting *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 144 S. Ct. 2244, 2264, 219 L. Ed. 2d 832 (2024)).

[45] *Van Loon v. United States Dep't of the Treasury*, 122 F.4th 549, 563 (5th Cir. 2024) (quoting *Loper Bright*, 144 S. Ct. at 2272).

[46] *Mincone*, 2025 U.S. Dist. LEXIS 26971, at *17 (quoting *Rest. L. Ctr. v. United States DOL*, 120 F.4th 163, 171 (5th Cir. 2024)).

[47] *Rest. L. Ctr.*, 120 F.4th at 171 (quoting *Loper Bright*, 144 S. Ct. at 2263).

[48] *Mincone*, 2025 U.S. Dist. LEXIS 26971, at *17 (quoting *Loper Bright*, 144 S. Ct. at 2261).

[49] *Id.* (quoting *Loper Bright*, 144 S. Ct. at 2261).

[50] *Id.* (quoting *Loper Bright*, 144 S. Ct. at 2266).

[51] *Id.* (quoting *Van Loon,* 122 F.4th at 563) (other citations and quotations omitted).

statute; [and] a merely permissible reading is not enough.'"[52]

Courts in the Fifth Circuit "'start with the statutory text.'"[53] And as stated above, "[w]here a statute leaves terms undefined, [the Court] afford[s] those terms their 'ordinary, contemporary, common meaning.'"[54] Here, Congress clearly and unambiguously delineated DRMS's (and other P&As) authority under the PADD Act to records and access at locations providing services to individuals with developmental disabilities.[55]

First, Congress gives DRMS that authority to "have access at *reasonable times* to any *individual* with a developmental disability in a location in which services, supports, and other assistance are provided to such an individual . . . ."[56] Second, Congress gives DRMS the authority to "have access to all records of–*any individual* with a developmental disability who is a client of the system" if the individual or legal guarding authorizes access to such records.[57] Congress goes on to explain that "record" in this section "includes–(1) a report prepared or received by any staff at any location at which services, supports, or other assistance is provided to individuals with developmental disabilities; (2) a report prepared by an agency or staff person charged with investigating reports of incidents of abuse or neglect, injury, or death occurring at such location, that describes such incidents and the steps taken to investigate such incidents; and (3) a discharge planning record."[58]

---

[52] *Van Loon*, 122 F.4th at 563 (quoting *Mayfield v. United States DOL*, 117 F.4th 611, 2024 WL 4142760, at *4 (5th Cir. 2024)).
[53] *Id.* (quoting *Tanzin v. Tanvir*, 592 U.S. 43, 46, 141 S. Ct. 486, 208 L. Ed. 2d 295 (2020)); *see also Mincone*, 2025 U.S. Dist. LEXIS 26971, at *17; *Rest. L. Ctr.*, 120 F.4th at 171.
[54] *Id.* (quoting *Rest L. Ctr.*, 120 F.4th at 171).
[55] *See* 42 U.S.C. § 15043.
[56] 42 U.S.C. § 15043(a)(2)(H) (emphasis added).
[57] 42 U.S.C. 15043(a)(2)(I)(i) (emphasis added).
[58] 42 U.S.C. 15043(c).

Section 15043 is simple.[59] Congress has not defined certain terms within this Section, as such we "turn first to contemporary dictionary definitions."[60] First, the word "individual" is defined as "a particular being or thing as distinguished from a class, species, or collection: such as (1) a single human being as contrasted with a social group or institution[;]"[61] or "a particular person."[62] Second, the term "reasonable" is defined as "being in accordance with reason; not extreme or excessive; or moderate, fair."[63] Lastly, the term "record" is defined as "a body of known or recorded facts about something or someone especially with reference to a particular sphere of activity that often forms a discernable pattern; [or] a collection of related items of information (as in a database) treated as a unit."[64]

The plain language of the state is clear and unambiguous here. Congress gave DRMS the authority to request "all records of–any individual with a developmental disability", i.e. J.E.'s–a particular person with a developmental disability--records, pursuant to the PADD Act.[65] DRMS would also have access to LMSD's investigation report of the alleged incident of abused and neglect.[66] Pursuant to the plain language of the statute, that is all the authority given to DRMS with respect to records under the PADD Act. As such, DRMS's requests to view (1) Joseph Vowell's personnel files; (2) video surveillance of any interaction between J.E. and staff for an entire week;

---

[59] *See Rest. L. Ctr.*, 120 F.4th at 171 (referring to text in a federal statute as "simple").
[60] *Id.* (citing *Taniguchi v. Kan Pacific Saipan, Ltd.*, 566 U.S. 560, 566-69, 132 S. Ct. 1997, 182 L. Ed. 2d 903 (2012)).
[61] *Individual (noun)*, MERRIAM-WEBSTER (2025), https://www.merriam-webster.com/dictionary/individual (last visited June 6, 2025).
[62] *Id.*
[63] *Reasonable*, MERRIAM-WEBSTER (2025), https://www.merriam-webster.com/dictionary/reasonable (last visited June 6, 2025).
[64] *Record (noun)*, MERRIAM-WEBSTER (2025), https://www.merriam-webster.com/dictionary/record (last visited June 6, 2025).
[65] *See* 42 U.S.C. 15043(a)(2)(I)(i).
[66] 42 U.S.C. 15043(c).

or (3) policy and procedure manuals for Nanih Waiya Attendance Center are outside of the plain and unambiguous meaning of the statute.[67] DRMS's requests for the above documents and footage are outside of its statutory power plainly given to it by Congress.

Additionally, the plain language of the statute given DRMS the authority to "have access at *reasonable times* to any *individual* with a developmental disability in a location in which services, supports, and other assistance are provided to such an individual . . . ."[68] That is, per the PADD Act, DRMS may have reasonable, meaning not extreme or excessive, moderate, and fair–to an individual with a developmental disability–J.E. in this case–at Nanih Waiya Attendance Center.[69] The plain language of the state **does not** give DRMS the authority to interview employees (i.e. individuals without developmental disabilities) or for DRMS to have unfettered, unnanounced, and unreasonable access to Nanih Waiya Attendance Center (a location, not an individual).[70] Indeed, the plain language states that DRMS may have *reasonable* access to an individual with developmental disabilities *in a location* which services such individuals. The statue does not state that DRMS has unfettered, unreasonable, and unaccompanied access *to a location* which services these individuals.

Accordingly, DRMS's reliance on definitions/explanations provided in the Code of Federal Regulations is immaterial.[71] This is because Section 15043 is clear and any deference to the agency's own, extremely broad, interpretation is not needed.[72] The best reading of Section 15043

---

[67] *See* **[Doc. 1-1]** at pg. 3; *see also Van Loon*, 122 F.4th at 563-64 (explaining that the plain meaning of a term in the statute does not support the Department of Treasury's designation/definition).
[68] 42 U.S.C. § 15043(a)(2)(H) (emphasis added).
[69] *See id.*
[70] *See* **[Doc. 1-1]** at pgs. 3-4.
[71] **[Doc. 1]** at ¶¶ 35-37.
[72] *See Van Loon*, 122 F.4th at 565 ("Our inquiry could end here: The plain meaning of "property" in the Act does not support the Department's designation of Tornado Cash."); *see also id.* at 571 ("Because these immutable smart contracts are not 'property' under the word's

is that DRMS is entitled to J.E.'s records, investigation reports of the alleged incident of abuse and neglect, and reasonable access to J.E., only, while attending Nanih Waiya Attendance Center. All other requests exceed the unambiguous statutory authority granted to DRMS under the PADD Act.

### C. DRMS Cannot Meet its Burden for Injunctive and Declaratory Relief.

DRMS cannot meet its burden for injunctive and declaratory relief.

#### 1. DRMS Cannot Show a Substantial Likelihood of Success on the Merits

DRMS's request for preliminary injunction fails as to the very first element because it cannot show that there is a likelihood of success of the merits. This is because the vast majority of the requested "records" and the unfettered requested "access" is outside of their statutory authority. "'Though there is no particular degree of likelihood of success that is required in every case, the party seeking a preliminary injunction must establish at least some likelihood of success on the merits.'"[73]

As set forth in detail above, the plain and unambiguous text of Section 15043 gives DRMS authority to request J.E.'s records, investigation reports of the alleged incident of abuse and neglect, and reasonable access to J.E., individually, while attending Nanih Waiya Attendance Center.[74] Nothing more.

It is anticipated that DRMS will attempt to place their requests within their statutory authority by pointing to certain regulations.[75] The CFR sections cited, however, improperly expand DRMS's

---

common, ordinary meaning . . . we hold that OFAC exceeded its statutory authority.").
[73] *N. Miss. Med. Ctr., Inc.*, 2025 U.S. App. LEXIS 1908, at *6 (quoting *Jefferson Cmty. Health Care Ctrs., Inc. v. Jefferson Par. Gov't*, 849 F.3d 615, 626 (5th Cir. 2017)).
[74] 42 U.S.C. § 15043(a)(2)(H); 42 U.S.C. § 15043(a)(2)(I); 42 U.S.C. § 15043(c).
[75] *See* **[Doc. 1]** at ¶¶ 35-38.

13

authority beyond the ordinary and unambiguous language set forth in Section 15043.[76] Indeed, it is a "'core administrative-law principle that an agency may not rewrite clear statutory terms to suit its own sense of how the statute should operate.'"[77] "'The foremost task of legal interpretation is divining what the law *is*, not what the judge-interpreter *wishes* it to be.'"[78] As such, this Court should "decline [DRMS's] invitation to judicial lawmaking–revising Congress's handiwork under the guise of interpreting it. Legislating is Congress's job–and Congress's job alone."[79]

Here, DRMS has no substantial likelihood of prevailing on the merits because it is outside of their statutory authority to demand (1) the personnel file of Joseph Vowell; (2) video surveillance for an entire week; (3) interviews with employees and staff at Nanih Waiya Attendance Center; (4) Nanih Waiya's policy and procedure manual; and (5) unreasonable, unfettered, and unnanounced "monitoring" visits to Nanih Waiya Attendance Center pursuant to the plain, ordinary, and

---

[76] *Compare e.g.,* 45 C.F.R. § 1326.27(b) (stating that P&As are authorized to have unaccompanied access to individuals with disabilities *at all times necessary* to conduct a full investigation of an incident of abuse and neglect) *with* 42 U.S.C. § 15043(a)(2)(H) (stating that DRMS may "have access *at reasonable times* to any individual with a developmental disability in a location in which services, supports, or other assistance are provided to such an individual, in order to carry out the purpose of this subtitle."); *Compare* 45 C.F.R. § 1326.27(b) (stating that DRMS shall have reasonable unaccompanied access to public and private service providers and to all areas of the service provider's premises that are used by individuals with developmental disabilities or accessible by them, that the access shall be provided without advanced notice, and that the authority allows DRMS the opportunity to interview any individual with a developmental disability, employee, or other persons) *with* 42 U.S.C. 15043(a)(2)(H) (stating ***only*** that DRMS may "have access *at reasonable times* <u>to any individual with a developmental disability in a location</u> in which services, supports, or other assistance are provided to such an individual, in order to carry out the purpose of this subtitle."). 42 U.S.C. 15043(a)(2)(H) provides authority to access to individual with a developmental disability at the location currently providing services to them, it <u>does not</u> provide authority for unfettered access *to the full location* in which the individual with developmental disabilities has access.

[77] *Rest L. Ctr.,* 120 F.4th at 175 (quoting *Util. Air Regul. Grp. v. EPA*, 573 U.S. 302, 328, 134 S. Ct. 2427, 189 L. Ed. 2d 372 (2014)).

[78] *Van Loon*, 122 F.4th at 571 (quoting *Reed v. Taylor*, 923 F.3d 411, 415 (5th 2019)).

[79] *Id.* (citations omitted).

unambiguous language of Section 15043.[80] DRMS cannot show a likelihood of success for these requests in light of well-established law and statutory interpretation. DRMS's claim fails for this reason alone.

2. **DRMS has Failed to Allege a Substantial Threat That It Will Suffer Irreparable Injury if the Injunction is Not Granted.**

Even if this Court finds that DRMS has plausibly alleged and/or proved a substantial likelihood of success of the merits of their requests, which it should not, DRMS has wholly failed to allege a substantial threat of irreparable injury if the injunction is not granted. "A preliminary injunction is appropriate only if the anticipated injury is imminent and irreparable, and not speculative."[81] Indeed, "[m]ere speculation or conclusory allegations of an irreparable injury are insufficient to entitle a movant to injunctive relief."[82] DRMS cannot do so.

In its Complaint, DRMS fails to plausibly allege that there is an imminent threat of injury if the injunction is not granted to DRMS itself, or to J.E., the individual it alleges suffered abuse or neglect.[83] First, DRMS makes no allegations in its Complaint of any sort of injury that is imminent to DRMS due to LMSD's actions. Indeed, it took DRMS almost three (3) weeks to even begin an investigation after receiving the complaint, and over one month to file its Complaint after its last contact with counsel for LMSD.[84] Further, there are no additional allegations of abuse or neglect

---

[80] *See* **[Doc. 1-1]**; 42 U.S.C. 15043.
[81] *Ondrsek v. United States Army Corps of Eng'rs,* 2023 U.S. Dist. LEXIS 93316, at *2 (N.D. Tex. March 27, 2023) (citations omitted).
[82] *Loscano v. Ligon*, 2024 U.S. Dist. LEXIS 15585, at *2 (W.D. Tex. Jan. 27, 2024) (citing *Daniels Health Sciences, L.L.C. v. Vascular Health Sciences, L.L.C.*, 710 F.3d 579, 585 (5th Cir. 2013) (other citations omitted)).
[83] *See* **[Doc. 1]** *generally*.
[84] *See* **[Doc. 1]** at ¶¶ 25-27 (alleging DRMS received a complaint on December 19, 2024 and that DRMS initiated its investigation on January 7, 2025, by sending a letter and emailing senior staff at LMSD); at ¶¶ 30-31 (indicating that DRMS spoke with Attorney Day on February

15

against LMSD, no allegations relating to any type of continuing issues with J.E. and LMSD, and no allegations of any imminent threat to any student, or class of students, at LMSD.[85] As such, DRMS's Complaint fails to plausibly plead any type of "imminent" and "irreparable" injury. DRMS fails to meet its burden here.

### 3. The Threatened Injury to DRMS Does Not Outweigh the Threatened Harm the Injunction May Do to LMSD, and Granting the Preliminary Injunction Disserves the Public Interest.

The last two elements weighs the competing harms to both parties, as well as considers the public interest in granting the preliminary injunction. Both elements weigh against DRMS here. First, DRMS has completely failed to allege any type of threatened injury. Even if it had, the conclusory and speculative injury does not outweigh the threatened harm to LMSD should the injunction be granted.

DRMS is requesting unauthorized, unfettered, and unreasonable access to Nanih Waiya Attendance Center, Nanih Waiya's employees, personnel files, and surveillance footage of a number of staff and other students. Nanih Waiya is a public school that houses kindergarten through high school students. LMSD and Nanih Waiya have a public interest in (1) providing quality education to all of its students; (2) protecting against unannounced and repeated disruptions in classrooms and in the facilities; and (3) protecting the disclosure of personnel and student records as well as surveillance videos of other students. Allowing DRMS carte blanche access to whatever they deem relevant, as well as access to busy administrators, teachers, and students severely frustrates this public interest. Indeed, a finding that some speculative injury to DRMS outweighs the harm that

---

3, 2025, and this Complaint was filed on March 28, 2025).

[85] *See* **[Doc. 1]** *generally*.

16

result to LMSD if the injunction were granted would open the floodgates and allow DRMS to literally enter any public school in Mississippi, at essentially any time, and demand any records and interviews it deems are necessary. Such a holding would be in complete contradiction to the public interest in effectively educating the children of Mississippi. These factors weigh in favor of LMSD.

## V.     CONCLUSION

In conclusion, DRMS does not meet its burden in seeking a preliminary injunction. The vast majority of DRMS's requests are outside of the statutory authority granted to them by Congress and Section 15043. The authority is unambiguous and there is no need for judicial deference to the Code of Federal Regulations. Additionally, DRMS has failed to plausibly pled any imminent and irreparable injury. And lastly, in balancing equities and harms, any injury to DRMS is outweighed by the harm granting the injunction would cause to LMSD and public interest is disserved in allowing DRMS unfettered access to public schools in Mississippi under their limited statutory authority. LMSD's Motion for Judgment on the Pleadings should be granted.

**WHEREFORE, PREMISES CONSIDERED**, Defendant prays as follows:

1. That the Louisville Municipal School District's Motion for Judgment on the Pleadings be granted; and

2. DRMS's Complaint for Preliminary Injunction and Declaratory Relief be dismissed with prejudice.

**RESPECTFULLY SUBMITTED,** this the 12th day of June, 2025.

**JACKS | GRIFFITH | LUCIANO, P.A.**

By:     */s/ Katherine P. McClellan*
          Katherine P. McClellan, MS Bar No. 105718
          Daniel J. Griffith, MS Bar No. 8366
          *Attorney for Defendant*

Of Counsel:

**JACKS | GRIFFITH | LUCIANO, P.A.**
150 North Sharpe Street
P. O. Box 1209
Cleveland, MS 38732
Phone No. 662-843-6171
Fax No. 662-843-6176
Email: katie@jlpalaw.com
dgriffith@jlpalaw.com

<u>**CERTIFICATE OF SERVICE**</u>

I, Katherine P. McClellan, attorney of record for Defendant, do hereby certify that I have this day caused a true and correct copy of the above and foregoing *Memorandum of Authorities in Support of Motion for Judgment on the Pleadings* to be delivered by the ECF Filing System which gave notice to the following:

>Greta K Martin, Esq.
>Disability Rights Mississippi
>5 Old River Place, Suite 101
>Jackson, Mississippi 39202
>Office: (601)968-0600
>Facsimile: (601)968-0665
>**Attorney for Plaintiff**

**DATED** this 12th day of June, 2025.

>*/s/ Katherine P. McClellan*
>Katherine P. McClellan